UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BILLIE JO JOY,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>HILARY ILLICK and<br>JENNIFER KRIER,<br><br>　　　Defendants. | Civil Action No. 05 11580 NMG |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISQUALIFY**

This Court should disqualify the law firm of Kirkpatrick & Lockhart ("K&L") from representing Plaintiff Billie Jo Joy ("Joy") in the above-captioned lawsuit on the ground that K&L has a preexisting attorney-client relationship with Defendants Hilary Illick ("Illick") and Jennifer Krier ("Krier"), and the resulting serious conflict of interest has not been waived by Illick and Krier.

In addition, K&L has obtained sensitive information relating to Defendants' litigation and settlement strategy through one of K&L's partners, Thomas Holt ("Attorney Holt"), who has social and professional dealings with Illick, Krier and their husbands and who has had several discussions about the substance of the lawsuit with all of them. These communications are imputed to K&L. These communications occurred before and after the lawsuit was filed and while Defendants were represented by other counsel. In its direct communications with Defendants and their husbands, K&L has disregarded the standard rules governing conflicts of interest and communications with

parties represented by other counsel. K&L did obtain a purported waiver of the conflict from Illick, but without informed consent. K&L also breached a key condition of the purported waiver. Thus, the purported waiver from Illick is not valid. K&L never obtained a waiver from Krier.

K&L has obtained confidential information from Defendants and their husbands relating to this lawsuit which prejudices their ability to defend against Plaintiff's (spurious) claims. Accordingly, K&L should be disqualified from continuing to represent Plaintiff.

### I. By K&L's Own Admission, Attorney Holt's Communications With Defendants Gave Rise To An Attorney-Client Relationship And K&L Has Not Obtained An Effective Waiver From Defendants.

In early 2005, Illick and her husband, Pierre Valette ("Valette"), together with Krier, had a conversation with Attorney Holt regarding the substance of this lawsuit and resolving the dispute. See Affidavit of Hilary Illick in support of Motion to Disqualify ("Illick Aff.") at ¶ 2; Affidavit of Pierre Valette ("Valette Aff.") at ¶ 2. Subsequently, K&L agreed to represent Plaintiff on a *pro bono* basis. Because of Attorney Holt's prior communication with Defendants, K&L acknowledged in a letter to Illick and Plaintiff, dated August 19, 2005, after suit was filed, that K&L was "concerned that the conversation [in early 2005]... gave rise to an attorney-client relationship between Ms. Illick and [K&L] relating to this dispute," and stated that "this law firm may proceed [in representing Plaintiff] only if we obtain the consent, or waiver, of the clients after consultation with them." (A copy of the August 19 letter is attached as Exhibit A to the Illick Affidavit).

2

In the August 19 letter, K&L requested that Illick waive the existing conflict. However, K&L did not inform Illick before she signed the waiver that K&L was representing Plaintiff on a *pro bono* basis and the Plaintiff would have a clear advantage against Illick and Krier who have to pay for their legal representation. Illick Aff. at ¶ 5. Without that critical information, Illick signed the waiver, requested by K&L. Because there was no informed consent, the waiver is not valid.

Of equal significance, the waiver was obtained from Illick based on false representations and a condition that K&L subsequently breached. K&L led Illick to believe that if she signed the waiver, K&L would work to resolve the dispute amicably. Illick Aff. at ¶ 4. This representation was false. After the Complaint was served, Valette was surprised and contacted Attorney Holt. He told Attorney Holt, among other things, Defendants' strategy concerning their resources, ability and commitment to finance the litigation. Attorney Holt responded by telling Krier's husband "not to worry about it" and that he "would do what he could to get this resolved quickly." Valette Aff. at ¶ 3. Attorney Holt's statement was communicated to Illick by her husband, and Illick understood it to mean that if she cooperated and signed the waiver, the lawsuit would be resolved without further litigation. Illick Aff. at ¶ 4.

Significantly, K&L also represented to Illick, as an express condition of her signing the waiver of conflict, that "Mr. Holt will have no conversations with the Defendants or their respective family members regarding the substance of this dispute." (See August 19, 2005 letter.) Based on these representations, Illick signed the waiver. Illick Aff. at ¶ 5.

3

Almost immediately afterwards, K&L breached the agreement with Illick as Attorney Holt continued to discuss the substance of the lawsuit with Krier's husband, Robert Cosinuke ("Cosinuke"), and in the process obtained further confidential information about Defendants' litigation and settlement strategy.[1] This information gave, and continues to give, Plaintiff a decided strategic advantage in this case.[2]

Specifically, in approximately September 2005, Cosinuke and Attorney Holt had lunch, and at the end of the meal they talked for about five minutes about the case. Cosinuke disclosed his view of Plaintiff, Defendants' view of the case and their litigation strategy. Attorney Holt described the K&L team of lawyers and his thoughts on their strategy. Cosinuke asked for help in resolving the case. Attorney Holt said he would look into the matter. Affidavit of Robert Cosinuke ("Cosinuke Aff.") at ¶ 2.

Two weeks later, Cosinuke called Attorney Holt to ask about the lawsuit, and Attorney Holt took the call from his secretary. Cosinuke explained the effect of the lawsuit on his wife and Illick. Cosinuke also explained Defendants' view of the relief being sought by Plaintiff and Defendants' response to those claims. Cosinuke told Holt what Defendants would settle the case for. Cosinuke Aff. at ¶ 3.

Attorney Holt said he would look into the matter. Cosinuke Aff. at ¶ 4. Attorney Holt later called back and left Cosinuke a long message saying that he had met with the K&L team, and he explained their counter offer. He also said that he believed Plaintiff

---

[1] Illick and Krier do not know whether Attorney Holt was ever informed by anyone at K&L about the commitment that K&L made to Defendants in the August 19th letter. Regardless, K&L is bound by its agreement with Illick and responsible for Attorney Holt's communications, which are imputed to the firm. K&L had an affirmative responsibility to inform Attorney Holt that he was no longer permitted to obtain confidential information about the lawsuit from Defendants or their husbands, which it did not honor.

[2] On information and belief Plaintiff has *already* used this information to make unreasonable demands during pre-suit negotiations.

4

would be flexible. Attorney Holt subsequently left another message for Cosinuke to give him more advice on how to get a deal done. Cosinuke Aff. at ¶ 5.

Attorney Holt had these direct conversations with Cosinuke about the substance of the case and settling it while Defendants were represented by counsel in direct violation of Rule 4.2 of the Massachusetts Rules of Professional Conduct. The conversations were also in direct violation of the alleged waiver of conflict that K&L had Illick sign, because Attorney Holt continued to have substantive conversations with Cosinuke regarding the lawsuit and settlement, though the alleged waiver expressly promised that Attorney Holt would not continue to have such conversations.

Because of these conversations, the waiver must be deemed breached, repudiated, and void, and the original conflict -- explicitly recognized by K&L in the August 19 letter -- must be deemed to exist. Indeed, given Attorney Holt's communications about the lawsuit with Cosinuke -- where Attorney Holt offered legal advice to Defendants and discussed settlement options -- the conflict has only grown more serious. In light of the confidential information K&L has obtained from Defendants, in breach of the purported waiver agreement, K&L should be disqualified to prevent undue prejudice to Illick and Krier.

## II. K&L Did Not Obtain Waiver From Krier and Therefore K&L Has Disqualifying Conflict.

Even if the Court found that Illick's waiver was valid despite the numerous infirmities discussed above, the Court should still disqualify K&L because it failed to obtain a signed waiver from Krier.

As a co-Defendant and co-author, Krier's legal interests and rights are identical to Illick's. Krier and Illick authored the play, which Plaintiff now (wrongly) claims in this

5

lawsuit to have co-authored. Krier participated in the original discussion with Attorney Holt in early 2005, which led to the alleged waiver agreement with Illick. That discussion equally affected and compromised Krier's rights. (Illick Aff. at ¶ 2; Valette Aff. at ¶ 2) Accordingly, K&L had an obligation also to obtain a waiver from Krier.[3] Because K&L did not obtain a waiver from her, K&L has a conflict of interest which should disqualify it from continuing to represent Plaintiff in this action.

### III.     K&L's Conflict Requires Withdrawal Or Disqualification.

Rule 1.7 of the Massachusetts Rules of Professional Conduct prohibits simultaneous representations (absent consent) that are "directly adverse" or those in which the lawyer's representation of one client "may be materially limited by the lawyer's responsibilities to another client."[4]

Disqualification is an appropriate remedy where an attorney for a law firm has received a client's confidential communications and subsequently attempts to represent a party adverse to that client. For example, in Bays v. Theran, 418 Mass. 685 (1994), the Supreme Judicial Court affirmed the disqualification of a law firm where the lower court

---

[3] Since the legal interests of Illick and Krier are identical and they are jointly defending against Plaintiff's claims, any attorney-client relationship with Illick should extend to Krier.

[4] Rule 1.7 provides in pertinent part as follows:

   (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

      (1) the lawyer reasonably believes the representation will not adversely effect the relationship with the other client; and

      (2) each client consents after consultation.

   (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client . . . unless:

      (1) the lawyer reasonably believes the representation will not be adversely affected; and

      (2) the client consents after consultation.

found that an attorney at the firm had represented an adverse party in the case and received confidential information from that party while at the firm. Id. at 693.

The American Bar Association Standing Committee on Ethics and Professional Responsibility (the "ABA") has specifically addressed the application of Rule 1.7 to the situation presented in this case, in which a lawyer represents one client in a matter in which another client of the lawyer is adverse. The ABA concluded that, absent consent, "a lawyer's examining the lawyer's client as an adverse witness, or conducting third party discovery of a client, will ordinarily present a conflict of interest that is disqualifying." ABA Formal Op. 92-367 (1992) (applying Rule 1.7 of the Model Rules of Professional Conduct, identical to Massachusetts Rule 1.7).[5]

A conflict exists "whenever there is tension between the interests of one client of an attorney and those of another." Commonwealth v. Martinez, 425 Mass. 382, 389 (1997). The Supreme Judicial Court has held in the analogous criminal context that "[w]hen an attorney simultaneously represents a criminal Defendant and a prosecution witness, there is the potential for a serious conflict of interest." Id. (ordering new trial where defense counsel told one client, a key prosecution witness, that he disbelieved his other client, the defendant on trial for murder). See also Commonwealth v. Geraway, 364 Mass. 168 (1973) (ordering new trial where criminal attorney cross-examined witnesses who were represented by attorney's law firm).

Also, adverse examination of the attorney's client implicates client confidences insofar as the attorney has a "general familiarity with how a client's mind works," or "if the lawyer

---

[5] It makes no difference that Illick and Krier might be considered clients of Attorney Holt, rather than Attorneys Peckham and Glynn, because disqualification is imputed to all attorneys of K&L under Rule 1.10. See Mass. Rule Prof. Conduct 1.10.

7

has acquired specific confidential information relevant to the cross-examination." ABA Formal Op. 92-367. See also Kevlik v. Goldstein, 724 F.2d 844 (1st Cir 1984) (civil rights plaintiffs, on basis of conflict arising from potential use of privileged information, won disqualification of municipal defendant's counsel by reason of his firm's brief representation, in underlying criminal case, of key plaintiff witness).

Here, there can be no question that the interests of Plaintiff and Defendants are directly adverse and that K&L has received confidential communications from Defendants and their husbands concerning this particular matter. K&L has obtained this information about Defendants' case and its settlement strategy as a result of Attorney Holt's conversations with Defendants and their husbands. This puts Illick and Krier in a seriously compromised position with respect to Plaintiff, justifying K&L's removal from this case.

### Conclusion

For these reasons, the Court should disqualify K&L from this case given their conflict of interest and the prejudice that conflict has caused and may continue to cause to Illick and Krier.

> Defendants
> HILARY ILLICK and
> JENNIFER KRIER,
> By their attorneys,
>
> _____
> Nicholas B. Carter, Esq. (BBO# 561147)
> Raymond P. Ausrotas, Esq. (BBO# 640315)
> Todd & Weld LLP
> 28 State Street, 31st Floor
> Boston, MA  02109
> (617) 720-2626
> ncarter@toddweld.com

Dated: April 10, 2006

CERTIFICATE OF SERVICE

    I, Nicholas B. Carter, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date: April__, 2006                              /s/ Nicholas B. Carter