# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BILLIE JO JOY,

                              Plaintiff,

v.                                                              Civil Action No. 05-cv-11580
                                                              (NMG)

HILARY ILLICK and
JENNIFER KRIER,

                              Defendants.

## PLAINTIFF BILLIE JO JOY'S OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY

Plaintiff Billie Jo Joy ("Joy") hereby opposes Defendant Hilary Illick ("Illick") and

Jennifer Krier's ("Krier") (collectively "the Defendants") Motion to Disqualify.  The

Defendants' motion to strip Joy of her chosen counsel should be denied because it misconstrues

the facts and misapplies the law.  There simply is no attorney-client relationship between Joy's

counsel, Kirkpatrick & Lockhart Nicholson Graham LLP ("K&LNG"), and the Defendants to

justify denying Joy her counsel.  Furthermore, the Defendants' motion appears to be little more

than another means to achieve the Defendants' goal of depriving Joy of *any* counsel and thus to

bring this case to an end even before the parties have exchanged their initial discovery

disclosures.

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In early spring of 2005 Joy retained K&LNG to represent her in the present lawsuit after

attorneys at K&LNG saw a description of her case in the weekly posting of *pro bono* cases

available through the Volunteer Lawyers for the Arts ("VLA") and contacted Joy about her case.

Affidavit of Counsel David M. Glynn ("Glynn Affidavit"), at ¶ 3.  Joy filed her Complaint in this

Court on July 27, 2005 seeking a declaratory judgment that she is a co-author of a script that she

wrote with the Defendants under the United States Copyright Act, an accounting of proceeds

from theatrical performance of the script, and based on counts of false advertising, breach of contract and estoppel.  The Complaint was served on the Defendants on July 27, 2005.

In early 2005, prior to the filing of the Complaint, one of K&LNG's attorneys, Tom Holt ("attorney Holt"), met defendant Illick, and her husband Pierre Valette ("Valette"), at a fundraising dinner in Boston.  Affidavit of Thomas F. Holt, Jr. ("Holt Affidavit"), at ¶ 5.  Defendant Krier and her husband, Robert Cosinuke ("Cosinuke"), were also at the fundraising event.  Id.  At the event, Illick, or her husband, had related to attorney Holt that they were involved in a dispute regarding authorship of a play that Illick had co-authored.  Id.  At the time, attorney Holt did not know that Joy would later become a client of K&LNG.  Id.  The conversation between attorney Holt and Illick or Valette was informal in nature and attorney Holt did not provide the Defendants or their husbands with any advice regarding their dispute.  Id.

Following service of the Complaint on the Defendants, attorney Holt received a telephone call from Valette in which Valette explained that Illick had been served with a complaint that had been filed in this case.  Id. at ¶ 6.  Valette said that he was concerned about the cost of having to oppose the complaint and that he did not have an attorney and was concerned about being defaulted for not responding.  Id.  Attorney Holt explained that he was unaware that that K&LNG was representing Joy and told him that he would inquire with his partner, attorney Deborah Peckham ("attorney Peckham"), who was working on the case.  Id.  He told Valette that if K&LNG had, in fact, filed the complaint, he was sure that attorney Peckham would afford him an opportunity to respond.  Id.  Attorney Holt did not provide him with any advice about the lawsuit or how to respond, but rather, only indicated that he would find out what was happening.  Id.

Upon conferring with attorney Peckham, attorney Holt learned, for the first time, that K&LNG was representing Joy in the lawsuit.  Id. at ¶ 7.  Attorney Holt contacted Valette and

told him that attorney Peckham was involved in the lawsuit and that he should have his attorney contact her.  Id.  At or about the same time, K&LNG, was contacted by attorney John Eastman, of New York, NY who purported to represent defendant Illick.  Glynn Affidavit, at ¶ 4.  The parties suggested to each other that they were willing to discuss settling the lawsuit.  Id.  However, in light of the conversation that had taken place between attorney Holt and Illick or Valette, and out of an abundance of caution, on August 19, 2005 Joy and Illick signed an agreement to waive any conflict of interest that might have arisen.  See Exhibit A, August 19, 2005 waiver letter.  Attorney Holt was not involved in drafting or negotiating the waiver.  Holt Affidavit at ¶ 8.  Thereafter, K&LNG and attorney Eastman began discussions regarding possible settlement of the lawsuit.[1]

In or about September of 2005, attorney Holt again happened to meet Illick, Krier, Valette, and Cosinuke at a fundraising event.  Holt Affidavit, at ¶ 9.  One or more of them attempted to discuss the lawsuit with attorney Holt but he informed all of them that he could not discuss the lawsuit with them.  Id.  On November 17, 2005, K&LNG was informed by attorney Eastman that the Defendants had retained Todd & Weld LLP of Boston to represent them in the case.  K&LNG continued to discuss resolution of the case with the Defendants' new counsel.  Glynn Affidavit, at ¶ 5.

In the fall of 2005, attorney Holt was approached on two separate occasions by Cosinuke regarding the lawsuit.  On one occasion, following a business lunch that attorney Holt attended with Cosinuke, Cosinuke related to attorney Holt that the lawsuit was still on-going and expressed concern at the cost of opposing the lawsuit.  Holt Affidavit, at ¶ 10.  Attorney Holt did not provide Cosinuke any advice regarding the lawsuit.  Id.  Then, in or about November of 2005, Cosinuke called attorney Holt.  Id. at ¶ 11.  He related that Krier and Illick were trying to settle the lawsuit but that K&LNG had not returned the phone calls of their lawyer.  Id.  Attorney

---

[1]    To accommodate these settlement discussion, Joy consented to several extensions of the deadline by which the Defendants were required to file their answer.

Holt told Cosinuke he would look into why K&LNG supposedly had not responded to communications from the Defendants' counsel.  Id.  After discovering from attorney Peckham that she was awaiting a response to a letter to the Defendants' lawyer, attorney Holt called Cosinuke on the telephone and left him a voicemail message explaining that it was his understanding that K&LNG had sent a letter to the Defendants' lawyer.  Id. at ¶¶ 12-13.  He further explained, in general terms, what he understood of the offer that was made in the letter as it had been related to him by attorney Peckham and what he understood the parameters of a possible settlement might entail.  Id. at ¶ 13.  He told Cosinuke to have the Defendants' lawyer communicate with attorney Peckham regarding that letter and the offer.  Id.  Following that telephone call, attorney Holt did not speak with Krier, Illick, Valette, or Cosinuke.  He did not communicate any legal advice to them regarding the lawsuit.  Id. at ¶ 14.

On or about February 15, 2006 the parties discontinued discussions regarding resolution of the lawsuit.  On March 7, 2006 the Defendants filed their Answer to the Complaint.  On April 10, 2006 Defendants filed their Motion to Disqualify.

## II.    ARGUMENT

Based on the facts set forth above, it is clear that there are no grounds upon which to disqualify K&LNG from representing Joy in this lawsuit.  Disqualification is disfavored by this Court and the Defendants have not provided any justification for depriving Joy of the counsel she has chosen.  Simply put, there is no attorney-client relationship between the Defendants and K&LNG that would warrant disqualification.  The Defendants' argument is that they have an implied attorney-client relationship with K&LNG because of informal conversations that they, or their husbands, had with attorney Holt.  No implied attorney-client relationship exists and no confidential information was provided to attorney Holt that would be protected by the privilege.  Tellingly, only one of the named defendants has actually submitted a supporting affidavit alleging that they had communications with attorney Holt.  The Defendants' motion is nothing

more than an attempt to deprive Joy of her chosen counsel in this case as part of a more general strategy to deprive her of *any* counsel at all.

    A.    <u>Motions to Disqualify Are Disfavored And Require Careful Inquiry</u>

Lawyers appearing before this Court are bound by the Massachusetts Rules of Professional Conduct.  United Stated District Court Rule 83.6(4)(B); <u>Inverness Medical Switzerland GMBH v. Acon Labs.</u>, Inc., No. Civ. A. 03-11323-PBS, 02-1203-PBS, 2005 WL 1491233, at *4 (D.Mass. 2005).  Under the law of this Circuit and the Massachusetts Rules of Professional Conduct, disqualification of a party's counsel is disfavored.  <u>Carta v. Lumberman's Mutual Casualty Co.</u>, No. Civ. A. 03-12237-NG, 2006 WL 595496 (D.Mass March 13, 2006); <u>Inverness Medical Switzerland GMBH</u>, 2005 WL at *4.  Indeed, "[d]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary."  <u>Inverness Medical Switzerland GMBH</u>, 2005 WL at *4; <u>see also</u> <u>Moss v. TACC Int'l Corp.</u>, 776 F.Supp. 622, 624 (D. Mass. 1991) ("disqualification has an immediate adverse effect on the client by separating him from the counsel of his choice.") (internal quotations omitted).

The rules of professional conduct are considered self-executing such that "when a lawyer, exercising his best judgment, determines that his employment will not bring him into conflict with the code, disqualification may occur only if the trial court determines that his continued participation as counsel taints the legal system or the trial of the cause before it."  <u>Inverness Medical Switzerland GMBH</u>, 2005 WL at *4 (quoting <u>Borman v. Borman</u>, 378 Mass. 775, 788 (1979)); <u>see also</u> <u>Wellman v. Willis</u>, 400 Mass. 494, 502 (1987) (opining upon "deference to the exercise of an attorney's best judgment as to whether . . . employment will bring the attorney into conflict with the code").

Moreover, "[c]ourts should be 'alert that the Canons of Ethics are not brandished for tactical advantage.'"  <u>Inverness Medical Switzerland GMBH</u>, 2005 WL at *4 (quoting <u>Serody v.</u>

Serody, 474 N.E.2d 1171, 1174 (Mass. App. Ct. 1985)); see also Moss, 776 F.Supp. at 624.

Courts have recognized the concern "about the high cost to litigants and to the court system

occasioned by motions to disqualify attorneys, especially when such motions are used as

harassment and dilatory tactics." Adoption of Erica, 426 Mass. 55, 65 (1997). It is recognized

that "[w]hen needless disqualification occurs as a result of these tactics, the very rules intended

to prevent public disrespect for the legal profession foster a more dangerous disrespect for the

legal process." Borman, 378 Mass. at 787.

These considerations bear great weight in any case, but particularly in this one where

attorney Holt clearly used sound judgment in refraining from speaking to the Defendants

regarding the lawsuit when possible, and provided them with little more than the mere courtesy

of assuring that the attorneys who were working on the case at K&LNG were in communication

with the Defendants. As explained more fully below, K&LNG never established an attorney-

client relationship with the Defendants, and the information conveyed to attorney Holt by the

Defendants, or their husbands, was not confidential and neither solicited, nor resulted in, legal

advice.

Furthermore, it is clear from the face of the Defendants' motion, and Illick's affidavit,

that the Defendants' true goal in filing their motion is to deprive Joy of counsel. Both the

motion and Illick's affidavit make much of the fact that K&LNG is representing Joy on a *pro

bono* basis, which the Defendants allege will "have a clear advantage against Illick and Krier

who have to pay for their legal representation." Defendants' Motion at p. 3; see also Affidavit of

Hilary Illick in Support of Motion to Disqualify ("Illick Affidavit"), at ¶ 5. In other words, they

believe that Joy has a *tactical* advantage over them. How *pro bono* counsel will provide better

representation than standard counsel is unexplained, but it is clear that through their motion, the

Defendants believe they can counter Joy's perceived "tactics" with tactics of their own – namely

depriving her of counsel.

Were the statements in Defendants' motion and affidavit not enough to show the true purpose of their motion, the Defendants, through their counsel, have taken additional measures, outside of the Court's gaze, in their effort to deprive Joy of counsel. After the Defendants' filed their motion, K&LNG learned from the VLA that the Defendants' counsel asked members of the Board of Directors at the VLA, which assisted Joy in finding K&LNG in the first place, to ensure that if the Court disqualifies K&LNG from representing Joy, the VLA will not assist her in finding alternate counsel.[2] Glynn Affidavit at ¶ 6. This outrageous conduct is no less than a bald attempt to deprive Joy not just of her *chosen* counsel, but of *any* counsel. It is further proof that the Defendants' motion is simply tactical and, therefore, should be denied.

B.     No Attorney-Client Relationship Exists Between The Defendants and K&LNG – Disqualification Is Improper

When a disqualification motion is brought based on a conflict of interest, courts will first examine whether an attorney-client relationship exists between the movant and the counsel they seek to disqualify. E.g., Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984); Inverness Medical Switzerland GMBH, 2005 WL at *5-6; Mailer v. Mailer, 390 Mass. 371, 374 (1983). The Defendants do not argue, nor can they, that they established an express attorney-client relationship with K&LNG as they did not have an express agreement for K&LNG to provide legal services, they never requested K&LNG to provide them with legal advice, and they have never had a fee arrangement with K&LNG. Rather, Defendants argument boils down to an unsupported allegation that they have an *implied* attorney-client relationship with K&LNG because of the conversations that they or their husbands initiated with attorney Holt before and after they knew that K&LNG represented Joy. Defendants' argument cannot prevail.

An implied attorney-client relationship may be implied only when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters

---

[2]     K&LNG has since learned that the VLA decided not to agree to the Defendants' counsel's request so that Joy, and other artists like her who cannot afford to pay for legal services, will continue to have a resource for *pro bono* services. Id. at ¶ 6.

7

within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give, or actually gives, the desired assistance. Sheinkopf v. Stone, 927 F.2d 1259, 1264 (1st Cir. 1991); Flaherty v. Baybank Merrimack Valley, N.A., 808 F.Supp. 55, 60 (D.Mass 1992). Furthermore, to imply an attorney-client relationship, "the law requires more than an individual's subjective unspoken belief that the person with whom he is dealing, who happens to be *a* lawyer, has become *his* lawyer." Sheinkopf, 927 F.2d at 1265 (emphasis in original); see also Flaherty, 808 F.Supp. at 60-61. The Defendants cannot satisfy the third prong of the test because K&LNG never agreed to give, and never actually gave, the Defendants any legal advice or assistance.[3]

Courts have held that, under the third prong of the test, an individual could not have reasonably believed that they had an attorney-client relationship where, for example, the individual never actually requested legal advice from the attorney, where a prior attorney-client relationship never existed, where a fee arrangement never existed, where the individual was represented by other counsel, and where there were not any particularized discussions of the legal issues regarding the matter. Sheinkopf, 927 F.2d at 1265-66; see also Flaherty, 808 F.Supp. at 60 (holding no implied attorney-client relationship existed where individual paid attorney's fees but attorney was representing another party and individual never questioned attorney on real estate documents they were signing at closing). Based on the facts set forth above, and Defendants' motion, it is clear that the Defendants never received legal advice from K&LNG, had no prior relationship with K&LNG and, significantly, were represented by other counsel during many of the conversations that they allege established the relationship. These

---

[3]     It is also doubtful that the Defendants can satisfy the first prong of the test, as the Defendants do not specifically allege that they ever sought legal advice from K&LNG, but rather, merely had conversations. Indeed, the only allegation that the Defendants *asked* attorney Holt for anything appears in Cosinuke's affidavit, which provides that he asked attorney Holt for "his help in resolving the case." Affidavit of Robert Cosinuke in Support of Motion to Disqualify ("Cosinuke Affidavit"), at ¶ 2. This request, made at a time when the Defendants *had counsel* of their own, cannot be interpreted as a request for advice. Therefore, Defendants cannot show that they ever attempted to establish an attorney-client relationship with K&LNG and their motion should be denied.

facts all lie against finding an implied attorney-client relationship and, therefore, disqualification is improper.

Furthermore, where conversations occur between the individual seeking disqualification and the attorney they seek to disqualify, courts will not disqualify the attorney where the conversations are merely general in nature and do not suggest that the attorney "agreed to furnish *legal* advice." Sheinkopf, 927 F.2d at 1266 (emphasis in original); see also Mailer v. Mailer, 390 Mass. 371, 374 (1983) (holding disqualification improper where individual merely conveyed general information in preliminary consultation with attorney); Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 522 (1989) (holding no attorney-client relationship existed where plaintiff never requested personal representation); Fiduciary Trust Co. v. Zimmerman, No. Civ. A 96-5581-E, 1997 WL 214839, at * 3-4 (Mass. Super. Ct. 1997) (holding disqualification improper where preliminary conversations were social and in public, no documents were exchanged, no notes were taken, and attorney provided no legal advice). Moreover, ambiguity over whether legal advice was sought or conveyed in the in the conversation lies against disqualification. Sheinkopf, 927 F.2d at 1266.

Here again, the Defendants fail to demonstrate that disqualification is proper. The conversations that the Defendants allege initiated their "relationship" with K&LNG were at a public fundraising event and were purely social in nature. No legal advice was provided. Holt Affidavit, at ¶5. Likewise, in the conversations that followed, all of which were initiated by Defendants or their husbands, K&LNG did not provide any legal advice, and focused, instead, on ensuring that there was adequate communication between Defendants' *attorney* and K&LNG. Tellingly, only *one* of the actual named Defendants has filed an affidavit in support of their motion and, therein, merely alleges she had a conversation with attorney Holt "regarding the substance of this lawsuit." Illick Affidavit, at ¶ 2. This general statement, which neither

indicates that advice was sought or given, or that any specific information was conveyed at all, cannot justify disqualification.

The remaining affidavits filed in support of the Defendants' motion are those of the Defendants' husbands, and detail how the husbands *initiated* contact with attorney Holt. The affidavit of Pierre Valette parrots defendant Illick's general allegations and adds only that he conveyed to attorney Holt, in a subsequent conversation that he initiated, information concerning their "resources, ability, and commitment to financing the litigation." Affidavit of Pierre Valette in Support of Motion to Disqualify ("Valette Affidavit"), at ¶3. In other words, he contacted attorney Holt to express concern about how much he and his wife were going to have to pay his wife's lawyer. Attorney Holt merely responded by finding out whether a lawsuit had, in fact, been filed and then recommended that Valette have his lawyer contact K&LNG. Holt Affidavit, at ¶¶ 6-7. Only Cosinuke's affidavit alleges that any specific information was conveyed to attorney Holt during conversations that Cosinuke initiated and, based on attorney Holt's affidavit, it is clear that no legal advice was sought or provided to Cosinuke. Holt Affidavit, at ¶¶ 10-13. Moreover, at the time those conversations took place, the Defendants were clearly represented by their own counsel and neither the Defendants, nor their husbands, could have reasonably believed that they had an attorney-client relationship with K&LNG. The Defendants motion does not support disqualification of Joy's counsel and should be denied.[4]

---

[4]     As no attorney-client relationship exists between the Defendants and K&LNG, the Defendants argument that they have failed to waive "the conflict" are irrelevant. Moreover, Defendants' heavy reliance on the language of the waiver agreement between Illick and Joy to show that a conflict exists is misplaced. The waiver agreement was executed to avoid any potential issues that may have arisen as a result of attorney Holt's initial conversation with the Defendants at the fundraising event. It explicitly acknowledges that the conversation was only "potentially" regarding the substance of the lawsuit and that "no confidential information was passed to [attorney Holt] during that informal conversation." See Exhibit A, waiver agreement, p. 1. At that stage of the lawsuit, both parties had expressed a desire to discuss resolution of the conflict and wanted to proceed along those lines. The waiver agreement was intended to remove any potential issues regarding attorney Holt's contact with the Defendants.

C.    <u>The Defendants Did Not Provide K&LNG With Any Confidential Information</u>

Just as the Defendants cannot show that the conversations between them, or their husbands, and attorney Holt gave rise to an implied attorney-client relationship, they also cannot show that they provided any confidential information that would justify disqualification.  To determine whether a given communication between an individual and an attorney was meant to be confidential, the Court must look to what the individual "reasonably understood," as well as to the individual's intent.  <u>See</u>, <u>e.g.</u>, <u>United States v. Bay State Ambulance and Hosp. Rental Serv., Inc.</u>, 874 F.2d 20, 28 (1st Cir. 1989).  In determining whether the individual reasonably understood that the information was confidential, the individual's subjective understanding is not enough.  <u>Bay State Ambulance</u>, 874 F.2d at 29.  Information is not confidential where it is known that it will be transmitted to another party.  <u>Id.</u> at 29 (holding information not reasonably considered confidential where sought to address questions from third party).  Nor will information typically be considered confidential where it is provided in a public and social setting.  <u>See</u> <u>Fiduciary Trust Co.</u>, 1997 WL 214839, at *4 (denying motion to disqualify because information provided in social settings could not reasonably have been intended to be sufficiently confidential to form attorney-client relationship); <u>see</u> <u>also</u> <u>Limbach Co. v. Alstom Power, Inc.</u>, No. 012275C, 2003 WL 21500580, at *3-4 (Mass. Super. Ct. 2003) (denying motion to disqualify where allegation that disclosure of litigation strategy created attorney-client relationship was lacking in specific detail of the purpose for which the disclosure was made, the specific information disclosed, and whether confidentiality agreement existed).

Defendant Illick, in her affidavit, does not even allege that she conveyed confidential information to attorney Holt during the conversation at the social fundraising event, but rather, vaguely alleges that they conversed "regarding the substance of this lawsuit."  Illick Affidavit, at ¶ 2.  As explained above, Illick's husband makes an identical statement about his conversation with attorney Holt, and adds only that in a subsequent conversation that he initiated with attorney

11

Holt after the complaint was filed, he conveyed his concern regarding the cost of the litigation. Valette Affidavit, at ¶¶ 2-3. Nothing in these affidavits suggests that confidential information was conveyed, nor could Illick or her husband have *reasonably* believed that they were conveying confidential information at the social fundraising event or subsequent to the lawsuit being filed, when they knew that K&LNG represented Joy.

Only Cosinuke, Krier's husband, provides any detail about the substance of his conversation with attorney Holt, but again, falls short of showing that he could have reasonably believed that his statements were confidential. Indeed, even if one were to accept at face value Cosinuke's vague allegation that he conveyed "litigation strategy" and "what [his] wife and [Illick] would settle the case for," Cosinuke Affidavit, at ¶¶ 2-3, these statements were made months after the complaint was served on the Defendants, and at a time when the Defendants were represented by their own counsel. Moreover, both were made to attorney Holt after attorney Holt had made clear, after meeting the Defendants at the second fundraising event, that he could not discuss the lawsuit with them. See Holt Affidavit, at ¶9. It is curious why Cosinuke would even approach attorney Holt at this late date knowing full well, as he must have, that his wife's counsel and K&LNG were engaged in settlement discussions. Put simply, neither Cosinuke, nor the Defendants themselves, could have *reasonably* believed that they were conveying confidential information to attorney Holt. Therefore, Defendants have failed to provide any justification for disqualifying K&LNG from representing Joy.

## III.    CONCLUSION

The Defendants' Motion to Disqualify is clearly intended to provide them with a tactical advantage by depriving Joy of her chosen counsel as part of a general campaign to deprive her of any counsel at all. It does not show, or even suggest, that K&LNG's continued representation would taint the legal system or the trial of this lawsuit. Moreover, Defendants have failed to show any grounds for disqualification because they cannot show that any attorney-client

relationship exists between them and K&LNG or that they reasonably believed that they had

conveyed confidential information.  Therefore, Plaintiff respectfully requests that the Court deny

Defendants' Motion to Disqualify.


                                    BILLIE JO JOY,

                                    By her attorneys,


                                    /s/David M. Glynn
                                    Deborah J. Peckham (BBO# 564865)
                                    Arnold R. Rosenfeld (BBO # 428860)
                                    David M. Glynn (BBO# 650964)
                                    Kirkpatrick & Lockhart
                                      Nicholson Graham LLP
                                    75 State Street
                                    Boston, MA 02109
                                    (617) 261-3000

Dated:  May 12, 2006


                                    13

**<u>CERTIFICATE OF SERVICE</u>**

  I, David M. Glynn, certify that a true copy of the foregoing document, filed through the Court's ECF system, will be served upon the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 12th day of May, 2006.


       <u>/s/David M. Glynn   </u>
       David M. Glynn

# Exhibit A

# KL®

## Kirkpatrick & Lockhart Nicholson Graham LLP

75 State Street
Boston, MA 02109-1808
617.261.3100
Fax 617.261.3175
www.klng.com

August 19, 2005

**First Class Mail**

David M. Glynn

617.261.3254
Fax: 617.261.3175
dglynn@klng.com

Billie Jo Joy
2 Sherman Street Apt. 3
Cambridge, MA 02138

Hilary Illick
ATTN: John Eastman, Esq.
Eastman & Eastman
39 West 54th Street
New York, NY 10019

Re:    Billie Jo Joy v. Jennifer Krier and Hilary Illick: CA No. 05-ca-11580 (NMG)

Dear Billie Jo and Hilary:

     I am writing to address the conflict of interest that has arisen in the course of the above-referenced litigation and to seek your waiver of that conflict. By way of background, in or around April of 2005, Billie Jo Joy hired Kirkpatrick & Lockhart Nicholson Graham LLP ("law firm") to represent her in the above-referenced litigation. Since that time, I, along with Deborah Peckham, have been representing Ms. Joy. In early August, 2005, following service of Ms. Joy's Summons and Complaint upon defendants Hilary Illick and Jennifer Krier, it came to light that Ms. Illick, and her husband, prior to Ms. Joy's hiring this law firm to represent her, had engaged in an informal conversation with another attorney at this law firm, Tom Holt, potentially regarding the substance of this dispute. Although Mr. Holt believes in good faith that no confidential information was passed to him during that informal conversation, the firm is concerned that the conversation nevertheless gave rise to an attorney-client relationship between Ms. Illick and this law firm relating to this dispute. As Ms. Joy and Ms. Illick are adverse to each other in the above-referenced litigation, a conflict of interest exists under the Massachusetts Rules of Professional Conduct.

     Under Rule 1.7 of the Massachusetts Rules of Professional Conduct this law firm may proceed only if we obtain the consent, or waiver, of the clients after consultation with them. Based upon telephone conversations with Ms. Illick's current attorney, John Eastman, of the New York law firm Eastman and Eastman, we understand that Ms. Illick is willing to waive the conflict and allow this law firm to continue to represent only Ms. Joy. We further understand that Ms. Joy is willing to waive the conflict so that we may continue our representation of her in this dispute.

BOS 889470 v3

BOSTON • DALLAS • HARRISBURG • LONDON • LOS ANGELES • MIAMI • NEWARK • NEW YORK • PALO ALTO • PITTSBURGH • SAN FRANCISCO • WASHINGTON



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Billie Jo Joy
Hilary Illick
August 19, 2005
Page 2

The parties each have suggested that they are willing to discuss and are interested in amicable resolution of this dispute. For the avoidance of doubt, in the event amicable resolution of this matter is not forthcoming, after execution of this waiver, the parties acknowledge and agree that the firm will only represent Ms. Joy in this dispute and that Mr. Holt will have no conversations with the defendants or their respective family members regarding the substance of this dispute.

We understand that both Ms. Joy and Ms. Illick have sought the advice of counsel independent from this law firm as to whether they wish to consent to this law firm's representation of Ms. Joy alone, and whether to waive the conflict that exists. If, after such consultation, the above terms are satisfactory to you and accurately state your understanding of your waiver of the conflict of interest posed by the engagement, please sign below on the signature line provided.

I agree that Kirkpatrick & Lockhart Nicholson Graham LLP will represent Ms. Joy alone in the above-referenced litigation:

_____        _____
Billie Jo Joy                                Date

_____        _____
Hilary Illick                                 Date
                                              *August 25 2005*

Sincerely,

David M. Glynn

Cc:    Deborah J. Peckham, Esq.

DMG:

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BILLIE JO JOY,<br><br>                  Plaintiff,<br><br>v.<br><br>HILARY ILLICK and<br><br>JENNIFER KRIER,<br><br>                  Defendants. | Civil Action No. 05-cv-11580<br>(NMG) |

### AFFIDAVIT OF THOMAS F. HOLT, JR.

I, Thomas F. Holt, Jr., being duly sworn according to law, under oath depose and say:

1.     I am a member of the Bar of the Commonwealth of Massachusetts and a partner with the law firm of Kirkpatrick & Lockhart Nicholson Graham LLP in Boston, Massachusetts.

2.     My partner, Deborah J. Peckham ("Ms. Peckham"), and an associate with my firm, David M. Glynn ("Mr. Glynn"), currently represent the plaintiff, Billie Jo Joy ("Joy") in the above-captioned lawsuit ("the lawsuit").

3.     I am submitting this affidavit to dispute the factual allegations made in the Affidavit of Hillary Illick in Support of Motion to Disqualify, the Affidavit of Pierre Valette in Support of Motion to Disqualify, and the Affidavit of Robert Cosinuke in Support of Motion to Disqualify.

4.     I do not believe that an attorney-client relationship exists between me and either of the defendants in the lawsuit.

5.     To the best of my recollection, in early 2005, I happened to meet Hilary Illick ("Illick") and her husband, Pierre Valette ("Valette"), and Jennifer Krier ("Krier") and her husband, Robert Cosinuke ("Cosinuke"), at a fundraising dinner in Boston, Massachusetts. During this social occasion, either Illick or Valette related to me that they were involved in a dispute regarding the authorship of a play that Illick had co-authored. This conversation was informal in nature. I did not provide them with any advice regarding their dispute, nor could I have since this action was not commenced until several months later. Furthermore, they did not at that time, nor at anytime afterwards, become a client of mine or of my firm. At the time of this conversation in early 2005, I had no knowledge whatsoever regarding this lawsuit. Moreover, I did not have any knowledge that my firm would later represent Joy in a lawsuit apparently related to the same dispute.

6.      In late July or early August of 2005, I received a telephone call from Valette in which he explained to me that Illick had been served with a complaint that had been filed in the lawsuit by my firm.  Valette said that he was concerned about the cost of having to oppose the complaint.  Valette also indicated that he did not have an attorney yet and was concerned that he would be defaulted for not responding.  I explained to Valette that I was unaware that my firm was representing Joy and told him that I would inquire with Ms. Peckham, but if this were the case I felt that Ms. Peckham would afford him an opportunity to respond.  I did not provide Valette any advice regarding the lawsuit or how to respond to the lawsuit.  I only indicated that I would find out what was happening.

7.      Upon conferring with Ms. Peckham, I was informed for the first time that my firm was representing Joy in the lawsuit.  I contacted Valette and told him that Ms. Peckham was involved in the litigation and he should have his attorney contact her.

8.      In or about August, 2005 I was informed by Ms. Peckham that although she did not believe my prior conversations with Illick and Valette had created an actual conflict of interest, out of an abundance of caution, she was working with Illick's counsel to enter a waiver with Joy and Illick of any potential conflict.  I was not involved in drafting or negotiating that waiver.

9.      In or about September of 2005, I again happened to meet Illick, Krier, Valette, and Cosinuke at a fundraising event.  One or more of them attempted to discuss the lawsuit with me.  I informed all of them that I could not discuss the lawsuit with them.

10.     In the fall of 2005, I attended a business lunch with Cosinuke.  We did not discuss the lawsuit during lunch.  When we had finished lunch and were about to depart, Cosinuke related that the lawsuit was still on-going.  He expressed concern at the cost of opposing the lawsuit.  I did not provide Cosinuke any advice regarding the lawsuit.

11.     In or about November of 2005, I received a telephone call from Cosinuke.  He related that Krier and Illick were trying to settle the lawsuit but that my firm had not returned the phone calls of their lawyer.  I told Cosinuke I would look into why my firm supposedly had not responded to communications from the Defendants' counsel.

12.     Based on Cosinuke's statement that my firm had not returned the phone calls of Krier's and Illick's lawyer, I spoke with Ms. Peckham to find out whether this was true.  She explained to me that she had been communicating with Krier's and Illick's lawyer and that she was awaiting a response from their lawyer to a letter that she and Mr. Glynn had sent regarding a settlement proposal.

13.     Thereafter, I called Cosinuke on the telephone and left him a voicemail message.  In the message I explained to him that it was my understanding that my firm had sent a letter to Krier's and Illick's lawyer.  I explained, in general terms, what I understood of the offer that was made in the letter as it had been related to me by Ms. Peckham and what I understood the parameters of a possible settlement might entail.  I told him to have

2

Krier's and Illick's lawyer communicate with Ms. Peckham regarding that letter and the offer.

14.    Following that telephone call, I have not spoken with Krier, Illick, Valette, or Cosinuke. I did not communicate any legal advice to them regarding the lawsuit.

Signed under the pains and penalties of perjury this 10ᴴ day of May, 2006.

Thomas F. Holt, Jr.

3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BILLIE JO JOY, | |
| Plaintiff, | |
| v. | Civil Action No. 05-cv-11580 (NMG) |
| HILARY ILLICK and JENNIFER KRIER, | |
| Defendants. | |

## AFFIDAVIT OF COUNSEL DAVID M. GLYNN

I, David M. Glynn, being duly sworn according to law, under oath depose and say:

1.  I am a member of the Bar of the Commonwealth of Massachusetts and an associate with the law firm of Kirkpatrick & Lockhart Nicholson Graham LLP ("K&LNG") in Boston, Massachusetts.

2.  I, along with attorney Deborah Peckham ("attorney Peckham"), currently represent the plaintiff, Billie Jo Joy ("Joy") in the above-captioned lawsuit.

3.  In early spring of 2005 Joy retained K&LNG to represent her in the above-captioned lawsuit after I saw a description of her case in the weekly posting of *pro bono* cases available through the Volunteer Lawyers for the Arts ("VLA") and contacted Joy about her case.

4.  In late July or early August of 2005, after filing the Complaint, I was contacted by attorney John Eastman, of New York, NY who purported to represent defendant Hilary Illick. Our discussions concluded that the parties were willing to discuss settling the lawsuit.

5.  On November 17, 2005, attorney Peckham and I were informed by attorney Eastman that the Defendants had retained Todd & Weld LLP of Boston to represent them in the case. We continued to discuss resolution of the case with the Defendants' new counsel.

6.  After the Defendants' filed their Motion to Disqualify, attorney Peckham and I learned from the VLA that the Defendants' counsel asked members of the Board of Directors at the VLA to act to ensure that if the Court granted the Defendants motion, the VLA would not assist her in finding alternate counsel. Attorney Peckham and I have since learned that the VLA decided not to agree to the Defendants' counsel's request.

Signed under the pains and penalties of perjury this 12th day of May, 2006.

/s/ David M. Glynn

David M. Glynn
